IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

TED R. TOLLESON,                                §
                                                §
v.                                              §         C.A. NO. C-12-201
                                                §
BRAD LIVINGSTON, JR., ET AL.                    §

## MEMORANDUM AND RECOMMENDATION
## TO GRANT DEFENDANTS' MOTION TO DISMISS

This is a pro se prisoner civil rights action filed pursuant to 42 U.S.C. § 1983.  Pending is

defendants' motion to dismiss.  (D.E. 19).  Plaintiff has filed a response objecting to the motion.

(D.E. 24).  For the reasons stated herein, it is respectfully recommended that defendants' motion

be granted.

## I.  JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.  BACKGROUND

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional

Institutions Division, and is currently incarcerated at the McConnell Unit in Beeville, Texas.

(D.E. 1).  His complaint alleges constitutional violations by two TDCJ officials, Brad

Livingston, the Executive Director of the TDCJ, and Stuart Jenkins, the Director of the TDCJ

Parole Division, for failing to provide psychotherapy treatment required by plaintiff's civil

commitment pursuant to Texas Health & Safety Code § 814.001, et seq., while in prison.  Id.

Specifically, plaintiff alleges that on May 5, 2009, he was civilly committed pursuant to

Texas Health & Safety Code § 814.001, et seq., and ordered to receive psychotherapy treatment.

(D.E. 1, at 9).  On May 21, 2010, he was found guilty of non-compliance with his civil

commitment requirements and sentenced to four years in prison.  Id.  While serving his sentence,

he has not been provided any treatment that would allow him to complete the requirements

imposed pursuant to his civil commitment.[1]  Id.  He asserts that this lack of treatment violates his

due process and Eighth Amendment rights.  (D.E. 24, at 17).  Plaintiff seeks admittance into the

Sex Offender Treatment Program, orchiectomy surgery, and punitive damages.

Defendants filed a motion to dismiss on September 5, 2012.  (D.E. 19).  On November 6,

2012, plaintiff filed a response in opposition.  (D.E. 24).  On November 13, 2012, defendants

filed a sur-reply.  (D.E. 25).

### III.  DISCUSSION

Defendants seek dismissal on two grounds: (1) they are entitled to Eleventh Amendment

immunity; and (2) they are entitled to qualified immunity.

**A.      The Standard Of Review For A Motion To Dismiss.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes courts to dismiss claims

for failure to state a legally cognizable claim that is plausible.  Lone Star Fund V (U.S.), L.P. v.

Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009)).  When ruling on a Rule 12(b)(6) motion, a court must accept the plaintiff's factual

allegations as true and view them in the light most favorable to the plaintiff.  Capital Parks, Inc.

v. Se. Adver. & Sales Sys., Inc., 30 F.3d 627, 629 (5th Cir. 1994) (citation omitted); see also

Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ...

dismissals based on a judge's disbelief of a complaint's factual allegations.").  A court may not

---

[1] Plaintiff indicates that he has met with staff psychotherapists multiple times while in prison, but that these psychotherapists are not certified to provide sex offender treatment as required to fulfill his civil commitment requirements.  (D.E. 1, at 6).

look beyond the face of the pleadings to determine whether relief can be granted based on the

alleged facts.  Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted); see also

Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the

pleadings are presented to and not excluded by the court, the motion must be treated as one for

summary judgment under Rule 56.").

A motion to dismiss pursuant to Rule 12(b)(6) tests the formal sufficiency of the

statement of a claim for relief.  It is not a procedure for resolving disputes about the facts of a

case.  The Supreme Court recently reiterated the stringent standards that defendants must

overcome to obtain such a dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, ... a plaintiff's obligation
> to provide the "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do....  Factual allegations
> must be enough to raise a right to relief above the speculative
> level, ... on the assumption that all the allegations in the complaint
> are true (even if doubtful in fact)....

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265,

286 (1986)).  In other words, the claim to relief must be plausible, rather than just conceivable.

Id. at 570.  Even the allegation of "facts that are 'merely consistent with' a defendant's liability"

will not suffice.  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557).  According to the

Supreme Court, "[a] claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Id. (citing Twombly, 550 U.S. at 556); see also Twombly, 550 U.S. at 561 (rejecting

the "no set of facts" standard enunciated in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) because

it permitted the survival of "a wholly conclusory statement of claim ... whenever the pleadings

left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery"); see also Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) ("conclusory allegations ... masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted).

By authorizing dismissal on the basis of some dispositive issue of law, the Rule 12(b)(6) pleading test dispenses with "needless discovery and factfinding" for the ultimate purpose of streamlining litigation. Nietzke, 490 U.S. at 326-27. The Fifth Circuit has specified that "'[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief.'" Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill, 561 F.3d 377, 384 (5th Cir. 2009) (quoting Campbell, 43 F.3d at 975). Moreover, a "court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint." Campbell, 43 F.3d at 975 (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

## B.    Defendants Are Entitled To Eleventh Amendment Immunity.

Defendants argue that to the extent plaintiff seeks damages against them in their official capacities, they are entitled to Eleventh Amendment immunity. In addition, they contend that plaintiff is not entitled to injunctive relief because he has failed to state a claim upon which relief can be granted. Specifically, he cannot state a due process claim because he has no cognizable property or liberty interest in receiving psychotherapy treatment in prison. Furthermore, the Eighth Amendment does not require prison officials to provide rehabilitative treatment to prisoners.

The Eleventh Amendment bars claims against a state filed pursuant to 42 U.S.C. § 1983

seeking monetary damages.  Aguilar v. Texas Dep't of Crim. Justice, 160 F.3d 1052, 1054 (5th

Cir. 1998) (citing Farias v. Bexar County Bd. Of Trustees for Mental Health Mental Retardation

Servs., 925 F.2d 866, 875 n.9 (5th Cir. 1991)).  "Section 1983 does not waive the state's

sovereign immunity," and Texas has not otherwise consented to be sued.  Id. (citing Quern v.

Jordan, 440 U.S. 332, 338 n.7 (1979); Emory v. State Bd. Of Med. Exam'rs, 748 F.2d 1023,

1025 (5th Cir. 1984)).  A suit against a state official in his or her official capacity is a suit against

the official's office, and consequently, "it is no different from a suit against the State itself."

Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted).  Therefore,

such claims are barred by the Eleventh Amendment.  The Fifth Circuit has held that the Texas

Department of Criminal Justice ("TDCJ") "is deemed an instrumentality of the state [of Texas]

operating as its alter ego in carrying out a public function of the state and is immune from suit

under the Eleventh Amendment."  Harris v. Angelina County, Tex., 31 F.3d 1052, 1054 (5th Cir.

1998) (citations omitted); accord Aguilar, 160 F.3d at 1054; Cox v. Texas, 354 F. App'x 901,

902 (5th Cir. 2009) (unpublished) (citation omitted).

        Nonetheless, "the Eleventh Amendment permits suits prospective injunctive relief

against state officials acting in violation of federal law."  Frew ex rel. Frew v. Hawkins, 540 U.S.

431, 437 (2004) (citation omitted).  To establish liability against a state employee in their official

capacity pursuant to § 1983, a plaintiff must demonstrate that an official policy is the "moving

force" behind the employee's allegedly unconstitutional act.  See Monell v. Dep't of Soc. Servs.,

436 U.S. 658, 694 (1978); Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

        First, plaintiff's claims for damages against defendants in their official capacity are

essentially claims against the state, and are therefore barred by the Eleventh Amendment.

Second, to the extent plaintiff seeks injunctive relief, he has failed to show that defendants

violated federal law through denying him psychotherapy treatment.

### 1.    Plaintiff does not have a constitutionally protected property or liberty interest in receiving psychotherapy in prison.

To the extent plaintiff alleges violations of procedural due process against defendants in

their official capacity, he has failed to state a claim.  This is because, despite his contentions, he

does not have a constitutionally protected property or liberty interest in receiving sex offender

treatment in prison.

The prerequisite to stating a procedural due process claim is the establishment of a

constitutionally protected property or liberty interest.  See Lollar v. Baker, 196 F.3d 603, 607

(5th Cir. 1999) (citations omitted) (discussing property interest); Johnson v. Rodriguez, 110 F.3d

299, 308 (5th Cir. 1997) (citations omitted) (discussing liberty interest).  The Fifth Circuit has

explained that for the purposes of establishing a property interest, "[s]uch a showing ... must be

made by reference to state law" because "'[t]he Constitution does not create property interests.'"

Lollar, 196 F.3d at 607 (citing Schaper v. City of Huntsville, 813 F.2d 709, 713 (5th Cir. 1987)).

Instead, "'they are created and their dimensions are defined by existing rules or understanding

that stem from an independent source, such as state law.'"  Id. (quoting Schaper, 813 F.2d at

713).  By contrast, in the context of prisons, inmates only have a constitutionally protected

liberty interest only if there is a significant deprivation of freedom that is atypical to the usual

conditions of confinement.  Sandin v. Conner, 515 U.S. 472, 484 (1995).

Here, plaintiff has not shown that the TDCJ policy deprives him of either a cognizable

property or liberty interest.  First, he has pointed to no state statute that creates a property

interest in receiving psychotherapy treatment in prison.  In fact, as defendants note, the Texas

civil commitment statute indicates that the treatment requirements imposed on civilly committed

sexual predators do not apply when an individual is in prison:

> *The duties imposed by this chapter are suspended for the duration*
> *of any confinement of a person*, or if applicable any other
> commitment of a person to a community center, mental health
> facility, or state school by governmental action.

Tex. Health & Safety Code § 841.150(a) (emphasis added).  Despite the clear mandate of this

provision, plaintiff attempts to argue that it indicates that treatment is *only* suspended when a

person is committed to "a community center, mental health facility, or state school, by

governmental action."  (D.E. 24, at 8).  A plain language reading of the statute reveals otherwise.

Specifically, the first clause is independent from the second, and it provides that the statute's

requirements do not apply during *any* confinement.  Though "confinement" is not defined by the

statute, it is commonly understood to mean "the state of being *imprisoned* or restrained."

Black's Law Dictionary, 340 (9th ed. 2009) (emphasis added); see also Merriam Webster's

Collegiate Dictionary, 242 (10th ed. 1996) (defining "confinement" as "the state of being

confined," and to "confine" as "to hold within a location" or "imprison").  Accordingly, absent

any indication to the contrary, "any confinement" seems to contemplate plaintiff's incarceration

in the TDCJ prison system.  Moreover, the dependent clause specifies *additional*–rather than

exclusive–circumstances to which the provision applies, indicating that "commitment" to a

community center, mental health facility, or state school should be included within the meaning

of "confinement."  Presumably, this is because these circumstances normally would not fall

within the plain meaning of the term.  Accordingly, plaintiff's urged statutory interpretation is

misplaced and unpersuasive.  His status as a TDCJ prisoner falls squarely within the provision,

thereby suspending his entitlement to any property interest the statute assumably creates.

Second, plaintiff has not established that defendants deprived him of a cognizable liberty interest, because TDCJ's failure to provide him with the psychotherapy he must complete to be released from civil commitment does not impose "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.  Plaintiff's argument relies on Leamer v. Fauber, 288 F.3d 532 (3d Cir. 2002), a case which is distinguishable from the facts here.  In Leamer, the Third Circuit found that a state prison's decision not to provide therapy to a violent sex offender could implicate a prisoner's liberty interest when the state civil commitment statute predicated the prisoner's early release on his successful completion of therapy.  Id. at 545-46.  Despite plaintiff's contention, that case did not hold that inmates are entitled to psychotherapy as a matter of due process.  In addition, unlike the state civil commitment statute in Leamer, the Texas statute does not entitle an inmate to early release upon completing therapy while serving a prison term.  In fact, pursuant to Texas law, the comparable treatment requirements are suspended during incarceration.  See Tex. Health & Safety Code § 841.150(a); accord Miller v. State, 333 S.W.3d 352, 357 (Tex. App. 2011) (per curiam) (quoting § 841.150(a)).  Accordingly, it is respectfully recommended that plaintiff has failed to show that he is being deprived of a cognizable property or liberty interest as necessary to form the basis of a due process claim against defendants in their official capacities.

**2.      Plaintiff has failed to state an Eighth Amendment claim because failure to provide psychotherapy does not amount to deliberate indifference.**

To the extent plaintiff alleges that the TDCJ no-treatment policy violates the Eighth

Amendment, he has failed to state a claim for deliberate indifference against defendants in their

official capacities.  Though the TDCJ does not provide him with the therapy specifically

required to seek release from civil commitment, plaintiff has had access to some form of

psychotherapy while in prison.  (D.E. 1, at 6).  Second, the TDCJ's failure to provide the specific

treatment plaintiff seeks does not otherwise constitute deliberate indifference.

The Eighth Amendment imposes a duty on prison officials to "provide humane

conditions of confinement."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation

omitted).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter,

and medical care, and 'must take reasonable measures to guarantee the safety of the inmates.'"

Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  Therefore, a prison official's

deliberate indifference to an inmate's health, safety or serious medical condition constitutes a

violation of the Eighth Amendment.  Id. at 834 (citations omitted).  To state a § 1983 claim

based on a prison official's deliberate indifference to an inmate's health or safety, the inmate

must prove both "objective exposure to a substantial risk of harm," and that "prison officials

acted or failed to act with deliberate indifference to that risk."  Gobert v. Caldwell, 463 F.3d 339,

345 (5th Cir. 2006).   At least one appellate court has recognized that psychopathy is not a

"serious medical need," the deprivation of which would create a substantial risk of harm for the

purposes of a deliberate indifference claim because "[p]sychopaths are dangerous to others, not

to themselves."  Stanley v. Litscher, 213 F.3d 340, 343 (7th Cir. 2000).  Moreover, the Fifth

Circuit has recognized that the Eighth Amendment does not require prison officials to provide inmates with rehabilitation programs.  See Newman v. State of Alabama, 559 F.2d 283, 291 (5th Cir. 1977) ("Failure of prison authorities to provide a rehabilitation program, by itself, does not constitute cruel and unusual punishment.") (citing McCray v. Sullivan, 509 F.2d 1332, 1335 (5th Cir. 1975)), rev'd in part on other grounds by Alabama v. Pugh, 438 U.S. 781 (1978).

Plaintiff has not established a deliberate indifference claim against defendants in their official capacities because he has not shown that denial of treatment exposes him to a substantial risk of harm.  He receives therapy while in prison, albeit not therapy that would satisfy the civil commitment treatment requirements.  Moreover, the psychotherapy that he seeks is aimed at protecting *society* from harm, rather than plaintiff himself.  In ruling on plaintiff's civil commitment appeal in 2009, the Texas Court of Appeals affirmed the jury verdict against him, noting that he had been diagnosed as a psychopath with antisocial personality disorder and is "predispose[d] [] to commit future acts of sexual violence."  In re Commitment of Tolleson, No. 09-08-0038-CV, 2009 WL 1474730, at *3 (Tex. App. May 28, 2009) (unpublished). Accordingly, he was ordered to complete treatment pursuant to the civil commitment statute, which is a rehabilitative measure.  The legislative findings for that law indicate that the purpose of the long-term supervision and treatment scheme is to address "the risk of repeated predatory behavior that sexually violent predators pose to society.... [which] is necessary and in the interest of the state."  Tex. Health & Safety Code § 841.001.  Given the nature and purpose of the treatment plaintiff seeks, the TDCJ's failure to provide it does not amount to a substantial risk of harm for the purposes of establishing deliberate indifference.

Accordingly, it is respectfully recommended that plaintiff has failed to state an Eighth

Amendment claim for injunctive relief against defendants in their official capacities.

## C.      Defendants Are Entitled to Qualified Immunity.

Defendants claim that to the extent plaintiff has sued them in their individual capacities

they are entitled to qualified immunity.

The doctrine of qualified immunity affords protection against individual liability for civil

damages to officials "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555

U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a

defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to

demonstrate the inapplicability of the defense.  McClendon v. City of Columbia, 305 F.3d 314,

323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted).  "To discharge this burden, a

plaintiff must satisfy a two-prong test."  Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th

Cir. 2005).  First, the plaintiff must show that the defendants committed a constitutional

violation under current law.  Id. (citations omitted).  Second, he must show that defendants'

actions were objectively unreasonable in light of the law that was clearly established at the time

the events of which plaintiff complains occurred.  Id. (citations omitted).  While it will often be

appropriate to conduct the qualified immunity analysis by first determining whether a

constitutional violation occurred and then determining whether the constitutional right was

clearly established, that ordering of the analytical steps is no longer mandatory.  Pearson, 555

U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

Here, plaintiff has failed to establish either a constitutional violation or that defendants

acted unreasonably in light of clearly established law.  First, he has not shown that either

defendant was personally involved in any alleged constitutional violation.  See Lozano v. Smith,

718 F.2d 756, 768 (5th Cir. 1983) (citation omitted) (explaining that a prison official cannot be

liable under § 1983 absent personal involvement or a causal connection between his actions and

the alleged violation); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citation omitted)

("Personal involvement is an essential element of a civil rights cause of action."); see also Rizzo

v. Goode, 423 U.S. 362, 371-72, 377 (1976) (requiring affirmative link between the injury and

the defendant's conduct).  Although he alleges that he wrote a letter to defendant Jenkins as the

Parole Division Director asking for treatment, the parole division is not responsible for providing

the relief he requests in prison.  In addition, he has not alleged any facts showing that defendant

Livingston was personally involved in denying him treatment.

To the extent he seeks to hold either defendant liable as a policymaker, he has not shown

that they "implement[ed] a policy so deficient that the policy 'itself is a repudiation of

constitutional rights' and is 'the moving force of the constitutional violation.'"  Thompson v.

Belt, 828 F.2d 298, 304 (5th Cir. 1987) (quoting Grandstaff v. City of Borger, 767 F.2d 161,

169, 170 (5th Cir. 1985) (internal quotations omitted)).  Regardless of either defendants' role in

implementing the policy,[2] the policy itself is not the moving force of a constitutional violation.

The TDCJ's failure to provide treatment cannot form the basis of either a due process or

deliberate indifference claim.  Consequently, he has not alleged that defendants violated any

clearly established constitutional right.  Moreover, in light of this conclusion, the objective

reasonableness inquiry for the purposes of establishing qualified immunity need not be reached.

---

[2] Plaintiff alleges that even if defendant Livingston did not implement the policy, he is liable for knowing of
it and failing to correct it.  (D.E. 24, at 21).

Accordingly, it is respectfully recommended that defendants are entitled to qualified immunity.

## IV.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that defendants' motion to dismiss, (D.E. 19), be granted and that this action be dismissed.

Respectfully submitted this 19th day of November 2012.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).